IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 18-00118-1-CR-W-HFS |
| Walter Molina-Lopez, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Presently pending before the Court is the MOTION TO SUPPRESS ALL EVIDENCE SEIZED AS THE RESULT OF THE UNLAWFUL SEARCH OF DUSTY MOLINA-LOPEZ' HOME [Doc. 18] filed by defendant Walter Molina-Lopez ("Molina-Lopez") on August 5, 2019. On September 16, 2019, the undersigned held an evidentiary hearing on Molina-Lopez' motion. Molina-Lopez was present and represented by his counsel, Assistant Federal Public Defender Carie Allen. The government was represented by Assistant United States Attorney Ashleigh Ragner. At the evidentiary hearing, testimony was provided by Special Agents Nicholas Nordstrom, Paul Mills, and Alberto Briseno, all with Home Security Investigations, as well as Ashley Plowden, an investigator with the Federal Public Defender's office, and Sara Gardner, a professional Spanish language interpreter. Additionally, the following exhibit was admitted into evidence

| Number | Description |
|---|---|
| Gov't #1 | Search warrant |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned recommends denial of Molina-Lopez' motion and submits the following proposed findings of facts and proposed conclusions of law.

## PROPOSED FINDINGS OF FACT

1. In April of 2017, Nicholas Nordstrom and Paul Mills were Special Agents with Home Land Security Investigations ("HSI"). Tr. at 4, 25-26.

2. On April 11, 2017, HIS had received information that Molina-Lopez was selling methamphetamines in Kansas City, Missouri. Tr. at 5-6.

3. SA Nordstrom also received information that Molina-Lopez was residing at 513 Drury Avenue in Kansas City. Tr. at 6.

4. SA Nordstrom ran a computer check on Molina-Lopez' name and learned that there was an active arrest warrant for Molina-Lopez for possession of a controlled substance issued out of a Missouri state court. Tr. at 6.

5. SA Nordstrom and some other HIS agents briefed some officers from the Kansas City Missouri Police Department and set up surveillance of the residence on Drury Avenue. Tr. at 6.

6. Shortly after initiating surveillance, officers observed a woman exit the residence with a child. Tr. at 7, 26.

7. Two officers approached the woman as she was getting into her car while SA Nordstrom and SA Mills went to the front door of the Drury Avenue residence intending to conduct a knock-and-talk. Tr. at 7, 26.

8. The door was answered by a woman (Susana Aguirre-Sanchez). Tr. at 7, 26-27, 33.

9. The officers identified themselves, asked if Molina-Lopez lived at the house, and asked if Miss Aguirre-Sanchez would consent to a search of the residence. Tr. at 7-8.

10. SA Nordstrom recognized that Miss Aguirre-Sanchez either did not understand English or was having trouble understanding English. Tr. at 8.

11. Consequently, SA Nordstrom began speaking to Miss Aguirre-Sanchez in Spanish. Tr. at 8.

12. SA Nordstrom is not fluent in Spanish but had graduated from a six-month Spanish language program with the U.S. Border Patrol Academy. Tr. at 8, 20-21.

13. At the conclusion of the training, SA Nordstrom passed both a written and spoken proficiency test. Tr. at 21.

14. Miss Aguirre-Sanchez seemed to understand and communicate with SA Nordstrom in Spanish. Tr. at 9, 27.

15. In response to SA Nordstrom's questioning, Miss Aguirre-Sanchez provided SA Nordstrom with a Mexican consulate card that showed her address at 513 Drury Avenue and her date of birth on July 28, 1969 (*i.e.*, she was 47 years old at the time). Tr. at 10.

16. In Spanish, SA Nordstrom asked Miss Aguirre-Sanchez if Molina-Lopez lived at the residence. Tr. at 11.

17. Miss Aguirre-Sanchez stated that Molina-Lopez lived there but was not currently at home. Tr. at 11.

18. In Spanish, SA Nordstrom asked Miss Aguirre-Sanchez if she would agree to allow officers to look in the house for weapons and drugs. Tr. at 11-12, 22-23.

19. Miss Aguirre-Sanchez consented to a search of the house by saying "yes," opening the door, and waving the officers in. Tr. at 11-12, 28.

20. After entering the house, officers performed a security sweep of the house and determined that no one else was present in the home. Tr. at 14-15.

21. Officers then performed a search of the house. Tr. at 15, 29.

22. In the basement of the house, officers found two Ziploc bags with a crystal substance that appeared to be methamphetamine, a scale, gloves, wrappings and some plastic tubes. Tr. at 15, 29.

23. At that point, officers stopped the search and requested one of the officers with the Kansas City Missouri Police Department to obtain a search warrant. Tr. at 15-16.

24. While waiting for the warrant, Miss Aguirre-Sanchez was permitted to leave and return the residence on a couple of occasions. Tr. at 16-17, 31-32.

25. Eventually, a search warrant was obtained for 513 Drury Avenue. Tr. at 17.

26. During the search conducted pursuant to the the warrant, officers found other digital scales and bags containing a crystal-like substance consistent with methamphetamine. Tr. at 18.

## PROPOSED CONCLUSIONS OF LAW

In his motion before the Court, Molina-Lopez asserts that the initial warrantless entry and search of the house at 513 Drury Avenue violated the Fourth Amendment. That constitutional provision, of course, specifically provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV (*emphasis added*). As made clear in the express language of the Fourth Amendment, the constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960). As protection for citizens from unwarranted government intrusion, the Fourth Amendment generally requires officers to obtain a court-sanctioned search warrant based on probable cause before searching private property. *See*, *e.g.*, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000).

Nonetheless, in many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, the officers did not have a warrant to search the Drury Avenue residence. In that regard, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).

It is well-established law that an exception to the warrant requirement of the Fourth Amendment is consent to search. *Florida v. Jimeno*, 500 U.S. 248, 250-51, 111 S. Ct. 1801, 1803 (1991). In a typical consent-to-search case, the touchstone in analyzing a motion to

4

suppress is whether the consent was voluntary. In broad strokes, consent to search is voluntary if it is "the product of an essentially free and unconstrained choice by its maker . . . rather than a product of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2047-48 (1973). To assist a court in making this ultimate determination, numerous factors relating to the person giving the consent and the environment surrounding the consent have been articulated. For instance, with regard to a defendant who consents, courts consider:

(1) the consenter's age;

(2) the consenter's general intelligence and education;

(3) whether the consenter was under the influence of drugs or alcohol;

(4) whether the consenter was informed of his *Miranda* rights prior to consent; and

(5) whether the consenter had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals.

*United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001). With regard to the environment surrounding consent, courts will examine whether the person who consented:

(1) was detained and questioned for a long or short time;

(2) was threatened, physically intimidated, or punished by the police;

(3) relied upon promises or misrepresentations made by the police;

(4) was in custody or under arrest when the consent was given;

(5) was in a public or secluded place; or

(6) either objected to the search or stood by silently while the search occurred.

*United States v. Mancias*, 350 F.3d 800, 805 (8th Cir. 2003).

5

In this case, the only real issue is whether Miss Aguirre-Sanchez gave a voluntary consent allowing officers to enter and perform an initial search of the residence at 513 Drury Avenue due to her inability to speak English. The government bears the burden of proving voluntary consent. *United States v. Willie,* 462 F.3d 892, 896 (8th Cir. 2006). Under the facts of this case, the Court finds that the government met its burden by evidence showing that SA Nordstrom was proficient enough in Spanish to effectively communicate with Miss Aguirre-Sanchez. Indeed, the government's burden is not to show that Miss Aguirre-Sanchez "actually consented to a search, [but] only that the police reasonably believe the search to be consensual." *United States v. Sanchez,* 156 F.3d 875, 878 (8th Cir. 1998). In this case, based on the Spanish language interactions by and between SA Nordstrom and Miss Aguirre-Sanchez and Miss Aguirre-Sanchez' ensuing action in opening the door and waving officers into the house, the Court finds that "in considering the totality of the circumstances, the officers could have reasonably believed that [Miss Aguirre-Sanchez] consented to the search." *United States v. Mendoza-Cepeda*, 250 F.3d 626, 629, 2001 WL 527171 (8th Cir. 2001). Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS ALL EVIDENCE SEIZED AS THE RESULT OF THE UNLAWFUL SEARCH OF DUSTY MOLINA-LOPEZ' HOME [Doc. 18] filed by defendant Walter Molina-Lopez on August 5, 2019.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and

serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                    */s/ John T. Maughmer*
                                                        **John T. Maughmer**
                                            **United States Magistrate Judge**